UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| RICHARD PICKENS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:14-cv-318-CAN |
| | ) | |
| WAL-MART STORES EAST, LP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

On May 22, 2012, the Plaintiff, Richard Pickens, and his wife entered the South Bend Wal-Mart store on Portage Road. Mr. Pickens observed a display skid containing boxes of above-ground pools. As he and his wife made their way toward the main aisle of the store, Mr. Pickens's left foot hit the corner of the display skid. He then tripped and fell and suffered serious injury. This lawsuit followed as Mr. and Mrs. Pickens alleged Wal-Mart was negligent and caused their injuries. Originally the case was filed in St. Joseph County Circuit Court but was removed to this Court on February 18, 2014.

Now before the Court are the following three ripe motions filed by Defendants, Wal-Mart Stores East, LP, WSE Management, LLC, and WSE Investment, LLC (collectively "Wal-Mart"): (1) Motion for Summary Judgment and Designation of Evidence filed on August 22, 2014; (2) Motion to Exclude Kevin Rider, PhD filed on April 21, 2015; and (3) Motion to Strike Evidence Designated by Plaintiffs in Opposition to Defendants' Motion for Summary Judgment filed on May 6, 2015. On August 4, 2015, the Court held oral argument on Wal-Mart's motions. The Court issues the following opinion pursuant to the consent of the parties and 28 U.S.C. § 636(c).

## II. Wal-Mart's *DAUBERT* MOTION TO EXCLUDE KEVIN RIDER, PH.D.

On April 21, 2015, Wal-Mart filed its Motion to Exclude Kevin Rider, Ph.D. On May 5, 2015, Plaintiffs filed their brief in opposition. Wal-Mart's motion became ripe on May 18, 2015, when Wal-Mart filed its reply brief. For the reasons discussed below, the Court grants Wal-Mart's motion.

### A. Relevant Background

Plaintiffs have presented the Court with an affidavit and deposition testimony from Dr. Kevin Rider, their designated expert offering opinions regarding Mr. Pickens's slip and fall over the exposed display skid at Wal-Mart Store #2680 in May 2012. Dr. Rider earned a doctorate degree in Industrial and Operations Engineering (Human Factors/Ergonomics, Biomechanics) in 2006 from the University of Michigan. After working as an assistant professor teaching industrial engineering and safety management courses, he has worked as a litigation consultant and currently serves as President of Forensic Human Factors, LLC, which "provide[s] technical investigations, analysis, reports and testimony toward the resolution of commercial and personal injury litigation involving human factors and ergonomics, workplace safety, machine guarding, slips, trips, falls, lighting and visibility, foreseeable human behavior, driver attention and distraction, and the adequacy of product warnings and instructions." Doc. 36-2 at 55.

Once retained by Plaintiffs, Dr. Rider reviewed discovery in this case as well as safety manuals and treatises about human factors to reach his opinions. In addition, he consulted with persons navigating a retail environment designed to pull customer attention in multiple directions

and considered the partially stocked display skid at issue in this case. Based on this information along with his own knowledge, training, and skill, Dr. Rider offered the following four opinions.

>   (1) Mr. Pickens had a reasonable expectation of a safe and unobstructed walking surface.
>
>   (2) Walmart's failure to provide a safe walking path for guests, such as Mr. Pickens, violated his reasonable expectation.
>
>   (3) Had [Wal-Mart] complied with national standards and design guidelines for walkway design and maintenance by eliminating the trip hazard, Mr. Pickens would not have fallen.
>
>   (4) Mr. Pickens's actions were reasonable and foreseeable, and were not a cause of his fall.

*Id.* at 68.

In its *Daubert* motion, Wal-Mart contends that Dr. Rider's testimony will not be helpful to a jury; that his opinions concern outcome-determinative legal issues; and that his opinions are not reliable. Plaintiffs argue that Wal-Mart's *Daubert* motion should be denied because its challenges to Dr. Rider's expert opinions go to the weight rather than the admissibility of the evidence. In addition, Plaintiffs contend that Dr. Rider's opinions are reliable, grounded in scientific theories and principles supporting opinions regarding the standards of care related to tripping hazard in walkways at large retail stores, and will be helpful to a jury.

### B. Applicable Legal Standard

Federal Rule of Evidence 702 governs the admission of expert testimony and states that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

3

(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 has liberalized the standard for qualifying as an expert witness. *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993). As a threshold matter, courts must examine whether 1) the expert will testify to valid scientific knowledge, and 2) whether that testimony will assist the trier of fact in understanding or determining a fact in issue. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993); *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999), the Supreme Court held that this inquiry must be taken in all matters relating to expert testimony and not only in those that contain scientific testimony.

### 1. Helpfulness to the Jury

As noted, the Court first must determine whether the proposed expert's opinions will assist the jury in understanding the issues presented in this case. The Court concludes Dr. Rider's opinions will not assist the jury. Fed. R. Evid. 702 requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is unnecessary if "the subject matter of the testimony is clearly within the average person's grasp." *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (citing *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004)). "Jurors do not leave their knowledge of the world behind when they enter a courtroom and they do not need to have the obvious spelled out in painstaking detail." *Dawson v. Delaware*, 503 U.S. 159, 171 (1992).

The jurors on Plaintiffs' jury would be familiar with—if not well versed in—the realities and circumstances of shopping at a large retail store. Many, perhaps all, will have shopped at a

Wal-Mart store or similar large stores. They will have encountered displays and will likely have had first-hand experience with retail sales techniques. As such, the jurors will be fully equipped to listen to testimony and review visual evidence to reach their own opinions about Mr. Pickens's expectations and the ultimate cause of his fall.

Moreover, the facts in this case are not complicated. Being exposed to display skids at a large retail store is a common experience that does not require specialized knowledge to analyze. In fact, Dr. Rider's testimony, which amounts largely to legally determinative conclusions, could actually confuse the jury unnecessarily. Therefore, the Court must exclude Dr. Rider's expert testimony because it does not meet the requirements set forth in Fed. R. Evid. 702.

### 2. Reliability

Even if Dr. Rider's opinions could assist the jury, they are not reliable. A district court must act as a "gatekeeper" to ensure that any and all expert testimony or evidence admitted is not only relevant but reliable. *Ramsey v. Consol. Rail Corp.*, 111 F. Supp. 2d 1030, 1036 (N.D. Ind. 2000). To fulfill the gatekeeper role, courts must determine whether an expert is qualified in the relevant field and whether the methodology underlying the expert's conclusion is reliable. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). A witness does not need to put forth testimony in a scientific or technical manner to be considered an expert. *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). Experts can be qualified to testify based upon personal experience and knowledge, so long as the experience and knowledge is reliable. *Kumho Tire*, 526 U.S. at 150; *Smith*, 215 F.3d at 718; *Tuf Racing*, 223 F.3d at 591. A court should examine the full range of practical experience and technical

training, as well as examine the methodology used in reaching a conclusion when deciding whether an expert is qualified to testify. *Smith*, 215 F.3d at 718.

However, "[a]n expert must substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007) (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir.1999) (internal quotations omitted)). Offering only a bottom line conclusion does not assist the trier of fact and should not be admitted. *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005); *Lennon v. Norfolk & W. Ry. Co.*, 123 F. Supp. 2d 1143, 1147 (N.D. Ind. 2000).

The judge retains "the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co.*, 526 U.S. at 158. In reaching its reliability determination, the court should consider the following non-exclusive factors: "whether or not the theory or technique has been (1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012) (citing *Daubert*, 509 U.S. at 593–94). "[N]othing . . . requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Opinion evidence may be unreliable if a court concludes "that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

In this case, substantial analytical gaps exist between the data Dr. Rider relied upon in reaching his opinion and the opinions themselves. Dr. Rider seems to have reached his opinions about Mr. Pickens's fall after reviewing discovery materials provided by Plaintiffs, but without

conducting any investigation into Mr. Pickens's own experiences with retail stores that use display skids or into the specific details of the episode at Store #2680 in May 2012.

Nevertheless, Dr. Rider opines about several legal questions, which no expert has authority to answer. Specifically, Dr. Rider's opinion includes conclusions about Mr. Pickens's expectancies in the shopping experience on that fateful day. *See* Doc. No. 36-2 at 68 (Rider's Opinion #1). Dr. Rider also opined on the legal issue of defining Wal-Mart's duty and then concluded that Wal-Mart breached the duty he defined without any knowledge of how long the corner of the display skid was exposed before Mr. Pickens tripped over it or how many customers passed the exposed skid without tripping. *See id.* (Rider's Opinion #2). Additionally, Dr. Rider opined about the legal questions of reasonableness, foreseeability, and the proximate cause of Mr. Pickens's fall. *See id.* (Rider's Opinion #4). Dr. Rider even concluded with certainty that Mr. Pickens's would not haven fallen had Wal-Mart acted differently. *See id.* (Rider's Opinion #3).

Analytical gaps warranting exclusion of an expert also arise from inconsistencies and contradictions within the expert's opinion. *See, e.g.*, *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1289, 1293 (M.D. Ala. 2001); *Wooten v. Johnson & Johnson Prods., Inc.*, 635 F. Supp. 799, 805 (N.D. Ill. 1986). Dr. Rider opines that retailers can provide high contrasting color on the edges of a display in order to warn customers to the trip hazard, but discounts the contrast between the black skid Mr. Pickens tripped over and the white floor. Wal-Mart suggests that this inconsistency brings into question the reliability of Dr. Rider's entire opinion.

The lack of investigation and lack of critical information discussed above is quite concerning. Moreover, Dr. Rider's report reads more like a research paper than an expert report

7

because he cites to secondary sources and then improperly reaches legal conclusions about this case. What is missing in the middle is any particular analysis of the unique facts surrounding Mr. Pickens's fall. In addition, the Court sees no evidence that such a method is common in the professional or scientific community of which Dr. Rider is a part.

This is not the first court to have excluded Dr. Rider as an expert witness. *See Torres v. Carnival Corp.*, No. 12-CV-23370-JLK, 2014 WL 3548456, at *4 (S.D. Fla. July 17, 2014) (excluding Dr. Rider's opinion in a case involving a trip and fall on a cruise ship because his methodology, which lacked first-hand investigation of the trip and fall incident, insufficient and consequently unreliable). Notably, the Eastern District of Pennsylvania also found that "Dr. Rider's assertion and citation to an academic source" without any testing or replication of circumstances at the time of the incident at the heart of that case constituted an unreliable methodology based on unsupported speculation. *DeJesus v. Knight Indus. & Assocs., Inc.*, No. 10-07434, 2013 WL 3833247, at *4 (E.D. Pa. July 25, 2013) *vacated on other grounds*, 599 F. App'x 454 (3d Cir. 2015).

In short, because Dr. Rider's opinions will not aid the jury in determining the facts and he may not offer opinions on the law, his testimony must be excluded.

### III. WAL-MART'S MOTION FOR SUMMARY JUDGMENT

On August 22, 2014, Wal-Mart filed its motion for summary judgment. On April 24, 2015, Plaintiffs timely filed their brief in opposition. Wal-Mart's motion became ripe on May 6, 2015. At oral argument, the Court afforded the parties an opportunity to file a supplemental brief on the effect of *Nagel v. N. Ind. Pub. Serv. Co.*, 26, N.E.3d 30 (Ind. Ct. App. 2015) on Plaintiffs' claims. Wal-Mart and Plaintiffs timely filed supplemental briefs on August 10, 2015,

and August 11, 2015, respectively. Review of the briefs and counsel's oral arguments leads the Court to grant Wal-Mart's motion for the following reasons.

**A.     Facts**

The following facts are primarily not in dispute. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

This lawsuit involves Plaintiffs' claims for personal injuries stemming from a trip and fall that occurred on May 22, 2012, at the South Bend Wal-Mart Store #2680 located on Portage Road. Plaintiffs, who reside in Niles, Michigan, traveled to the store to do some shopping. They entered the store through its north entrance, on the side where groceries are located. After obtaining a shopping cart from the vestibule, Plaintiffs began proceeding through the store together with Mr. Pickens walking slightly behind and to the left of Mrs. Pickens who was pushing the shopping cart.

As soon as Mr. Pickens entered the store, he observed a display skid[1] containing boxes of above-ground pools. Although he was not interested in purchasing a pool, Mr. Pickens looked at the price of the pools as he and Mrs. Pickens made their way toward the main aisle running from the front to the back of the store. While following Mrs. Pickens, Mr. Pickens's left foot hit the corner of the pool skid causing him to trip and fall.

The skid only had pools on one side leaving the corner and edges he tripped on empty. The skid itself was black in color and atop the tile floor that was white. Mr. Pickens testified

---

[1] The Court will use the phrase "display skid" throughout this order although synonyms used in the parties' briefs include "pallets" and "stack bases."

that nothing was interfering with his view of the exposed corner and that he could have avoided tripping over the exposed corner had he looked down at the display skid as he walked past.

  **B.**  **Analysis**

    **1.**  **Applicable Legal Standards for Summary Judgment**

  Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Healy v. City of Chicago*, 450 F3d 732, 738 (7th Cir. 2006).

  To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1112–13 (7th Cir. 2013). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to

accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014).

### 2. Negligence and Premises Liability Standards

To prevail on a claim of negligence, a plaintiff must prove that (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) the plaintiff suffered an injury proximately caused by the breach. *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). In this case, Plaintiffs' negligence claim is based upon premises liability. Under Indiana law, a landowner owes "the duty to exercise reasonable care for [an] invitee's protection while he or she is on the premises." *Harradon v. Schlamadinger*, 913 N.E.2d 297, 300–01 (Ind. Ct. App. 2009); *see also Sowers v. Tri-Cnty. Tel. Co.*, 546 N.E.2d 836, 838 (Ind. 1989).

Indiana has defined a landowner's duty consistent with the Restatement (Second) of Torts. *See Burrell v. Meads*, 569 N.E.2d 637, 640–41 (Ind. 1991); *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990); *Nagel*, 26 N.E.3d at 44.[2] Based on Section 343 of the Restatement (Second):

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

---

[2]Having considered the parties' supplemental briefs on the Indiana Court of Appeals's recent decision in *Nagel*, the Court concludes that the results in *Nagel* are neither controlling nor persuasive in this matter. First, the *Nagel* facts are distinguishable from the facts in this case. Second, the Indiana court appropriately applied the more stringent Indiana standard for summary judgment that does not apply in federal court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Third, *Nagel* does not add substantively to the Indiana law of negligence or to the Indiana courts' interpretation of the distraction doctrine relied upon by Plaintiffs in this case. The Court cites *Nagel* here, however, solely because it is a recent statement and affirmation of Indiana's established premises liability standards that are applicable in this case.

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Nagel*, 26 N.E.3d 30, 44 (quoting Restatement (Second) of Torts § 343). Notably, a business invitee must establish all three of the elements cited in Section 343 for a landowner to be held liable. In short, landowners like Wal-Mart only have a duty to protect business invitees against dangers that involve an unreasonable risk of harm. Conditions posing only a reasonable risk of harm do not trigger a landowner's duty to protect and cannot support a finding of premises liability against a landowner. In addition, a landowner's corporate policies, including safety guidelines, do not create a higher duty to protect invitees. *Wal-Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 894 (Ind. 2002) (citing *Sherman v. Robinson*, 606 N.E.2d 1365, 1369 n.3 (N.Y. 1992)). A landowner's corporate safety policies are not "evidence tending to show the degree of care recognized . . . as ordinary care under the conditions. *Id.* at 894–95.

In cases of unreasonable risk, however, a possessor of land may still avoid liability for physical harm to an invitee caused "by any activity or condition on the land whose danger is known or obvious to [the invitee], unless the possessor should anticipate the harm despite such knowledge or obviousness." *Douglass*, 549 N.E.2d at 370; *Nagel*, 26 N.E.3d at 44 (quoting Restatement (Second) of Torts § 343A(1)). As a result, "a landowner is not liable for injuries that are caused by conditions that are known or obvious unless the landowner can anticipate that injury despite the obviousness of the risk." *Carter v. Am. Oil Co.*, 139 F.3d 1158, 1164 (7th Cir. 1998). In other words, "[t]he duty of [a landowner] is an active and continuing one [that] does not cease simply because the invitee learns of unsafe conditions on the premises." *Get-N-Go*,

*Inc. v. Markins*, 550 N.E.2d 748, 751 (Ind. 1990). Nevertheless, a landowner has "no duty to insure a business invitee's safety while on the premises." *Schultz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012).

> **3. Plaintiffs have not produced sufficient evidence upon which a reasonable jury could find that the exposed corner of the display skid constituted an unreasonable risk.**

Neither party here disputes that Wal-Mart had a duty to protect Mr. Pickens as a business invitee from known or obvious dangers that it should have expected him to discover or fail to protect himself against. Wal-Mart contends, however, that Plaintiffs' negligence claim cannot succeed because Wal-Mart did not breach its overarching duty of care to Mr. Pickens. Specifically, Wal-Mart argues that the exposed corner of the display skid was a known or obvious danger. In other words, the exposed corner did not trigger a duty beyond ordinary care because it did not pose an unreasonable risk of harm to customers. In addition, Wal-Mart argues that no reasonable jury could conclude that Wal-Mart should have expected Mr. Pickens would fail to observe and avoid the exposed corner of the display skid over which he tripped. As a result, Wal-Mart concludes that it is entitled to summary judgment as a matter of law because Plaintiffs cannot meet their burden to establish all the elements of negligence under Indiana law. The Court agrees.

Plaintiffs ask the Court to focus its attention on the question of whether Wal-Mart could have and should have anticipated that an invitee, like Mr. Pickens, would trip and fall over the exposed corner of the display skid despite his actual knowledge of the dangerous condition.[3]

---

[3] In their supplemental *Nagel* brief, Plaintiffs cited for this first time *Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683 (Ind. Ct. App. 2008) as an example of an Indiana court's decision denying summary judgment in a case where an invitee knew of an icy condition on the landowner's property, recognized the danger it posed, and

13

Plaintiffs argue that Wal-Mart's sales tactics, which included the display of products on skids in customer walkways, created sufficient distraction to turn the exposed corner of the display skid into an unreasonable risk of harm to customers who knew it was there.

### a. Duty

While there is some authority for Plaintiffs' theory (*see* Comment F to Section 343A of the Restatement (Second) Torts), Plaintiffs have cited no Indiana authority adopting the "distraction theory" in a commercial slip and fall setting. Moreover, the lone case in Indiana that addressed the distraction theory rejected it. *See Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1267 (Ind. Ct. App. 2002) (finding the distraction doctrine inapplicable where an independent contractor fell through a skylight while working on a roof having been distracted by a co-worker's conversation with him). But what dooms Plaintiff's case is not the absence of a legal theory of liability, but rather the lack of evidence upon which a rational jury could find liability.

The facts of this case are neither complicated nor uncommon. As Plaintiff's counsel admitted at the oral argument and as the record reveals, these are the undisputed facts:

1. Mr. Pickens observed the display skid as he entered the store. *See* Doc. No. 19-1 at 2 (Pl.'s Dep. 28:12–23).

2. He looked at the price of the pools on the skid. *Id.* (Pl.'s Dep. 28:25).

3. Nothing interfered with Mr. Pickens's view of the corner of the skid. *Id.* at 6 (Pl.'s Dep. 43:5–7).

---

proceeded onto it nontheless resulting in injuries from a slip and fall. Because Plaintiffs' development of *Countrymark* exceeded the permitted scope of the supplemental brief and was not addressed at all in Plaintiffs' original briefing, the Court will not incorporate *Countrymark* into its analysis here. Summary judgment is the "put-up or shut-up" point of litigation. This Court will not grant Plaintiffs a second bite at the apple to add authority that could have been cited originally.

4. The skid is dark and the floor is light. *See* Doc. No. 20 at 3 (Def.'s Ex. C, photograph).

5. Mr. Pickens's left foot hit the exposed corner of the skid and he fell. Doc. No. 19-1 at 3 (Pl.'s Dep. 29:8–21).

6. Mr. Pickens admitted in his deposition that had he looked down as he went around the skid he would have seen the corner and could have avoided tripping over it. *Id.* at 6 (Pl.'s Dep. 43:8–14).

The only other evidence Plaintiffs intended to offer, Dr. Rider's opinions, is inadmissible.

So what remains is Mr. Pickens's admissions that he observed the display skid and its exposed corner; and that he could have avoided his fall had he simply looked down when he was walking. In other words, Mr. Pickens discovered the dangerous condition of the exposed corner and appreciated its danger. The obviousness of the exposed corner is graphically revealed in a photograph that Plaintiffs agree accurately represents the condition of the display skid at the time of Mr. Pickens's fall. The picture clearly shows the stark contrast between the color of the dark skid and the white floor tiles surrounding the skid. In light of Mr. Pickens's admissions and the picture of the skid, there can be no serious argument that the exposed corner of the display skid was not a known and obvious danger. More importantly, there can be no serious argument that Wal-Mart should have expected Mr. Pickens to fail to protect himself against the known and obvious danger posed by the exposed corner of the display skid.

Additionally, the facts here compare favorably to those in *Parojcic v. Bethlehem Steel Corp.*, in which the Seventh Circuit, applying Sections 343 and 343A of the Restatement (Second) of Torts under Indiana law, held that the property owner was not liable for injuries caused by a pipe that fell on the plaintiff because it was plainly visible. The Court held that the property owner "could reasonably have expected an invitee to notice its existence and the danger

15

it posed." 128 F.3d 601, 604 (7th Cir. 1997). Similarly, this Court held that a gas station was not liable for injuries incurred when a patron tripped over long gas hoses while filling up her car with gas. *Cummings v. Martin & Bayley, Inc.*, 2:11 CV 143, 2013 WL 620315, at *5 (N.D. Ind. Feb. 15, 2013). In *Cummings*, the plaintiff admitted that she had observed the gas hoses lying on the ground and that she had actually maneuvered safely over them once before she fell. *Id.* As such, this Court held that "no reasonable jury could conclude that defendant would expect an invitee would fail to discover the danger posed by the hoses or would fail to protect themselves against that danger." *Id.*

In summary, considering the facts in the record in the light most favorable to Plaintiffs, the Plaintiffs have failed to produce evidence that a genuine dispute of material fact exists as to whether the exposed corner of the display skid posed an unreasonable risk of harm to Mr. Pickens. Mr. Pickens knew the corner was exposed and he admits that he could have protected himself from the fall had he merely looked down. Additionally, the stark contrast in color between the skid and floor, as shown by the picture, sufficiently warned Mr. Pickens of the danger in this situation. Without evidence sufficient for a reasonable jury to find that the exposed skid created an unreasonable risk of harm, the Court finds that Wal-Mart had no duty to protect Mr. Pickens from the exposed skid.

### b. Breach

Even if the Court were to find that Wal-Mart's sales tactics were sufficient to turn the exposed corner of the display skid into an unreasonable risk of harm creating a duty to warn business invitees, like Pickens, about it, Plaintiffs have not produced evidence to show that Wal-Mart's breached such a duty. Indeed, the parties agree that when a landowner can anticipate an

16

injury from a known or obvious danger, even when an invitee has actual knowledge of the danger on its premises, it cannot escape liability. *See Carter*, 139 F.3d at 1164; *Douglass*, 549 N.E.2d at 370 (citing Restatement (Second) of Torts § 343A(1)). In other words, a landowner can breach its duty of care to an invitee if it fails to warn or otherwise protect an invitee from an anticipated harm that could arise from a known or obvious danger.

Yet, the record lacks evidence to support such a breach. Plaintiffs rely upon Dr. Rider, whose opinions have already been found inadmissible, to suggest methods for protecting invitees from the potential harm of the exposed corner of the display skid. Plaintiffs also inappropriately rely upon Wal-Mart's own store policies about skids as evidence of their breach. *See Wright*, 774 N.E.2d at 894–95. In addition, the record totally lacks any evidence to show whether Wal-Mart knew that the corner of the particular pool skid at issue here had been exposed or what steps its employees took to protect invitees from the alleged unreasonable risk associated with that particular skid. More importantly, Plaintiffs provides no admissible evidence as to what would constitute sufficient warning of the risk surrounding the exposed corner.

Without evidence of a breach, no reasonable jury could find a breach even if a duty to warn or take further precautions existed. Therefore, Plaintiffs cannot survive summary judgment because they have failed to establish a genuine dispute of fact as to the existence of a duty and a breach. Without a duty and any breach, Plaintiffs cannot succeed on their negligence claim and Wal-Mart is entitled to a judgment as a matter of law.

## IV. CONCLUSION

Because Dr. Rider's testimony would not be helpful to a jury and his methodology in reaching his opinion was not reliable, the Court **GRANTS** Defendants' motion to exclude the

testimony of Dr. Kevin Rider. [Doc. No. 33].  Having found Dr. Rider's opinion inadmissible, the Court also **GRANTS** Defendants' Motion to Strike Evidence Designated by Plaintiffs in Opposition to Defendants' Motion for Summary Judgment. [Doc. No. 39].

Lastly, because no genuine disputes of material fact exist and because the Plaintiff has failed to produce evidence upon which reasonable jury could conclude that Wal-Mart breached its duty to Plaintiffs, the Court finds that Wal-Mart Stores East, LP; WSE Management, LLC; and WSE Investment, LLC are entitled to judgment as a matter of law and **GRANTS** their motion. [Doc. No. 19].  The Clerk is **INSTRUCTED** to enter judgment for Wal-Mart Stores East, LP; WSE Management, LLC; and WSE Investment, LLC on all claims.

**SO ORDERED.**

Dated this 20th day of August, 2015.

                                                 S/Christopher A. Nuechterlein
                                                Christopher A. Nuechterlein
                                                United States Magistrate Judge